**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **DEREK D. FLEMING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 11-2911-STA-dkv** |
| | ) | |
| **SHARP MANUFACTURING** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Sharp Manufacturing Company of America's Motion for Summary Judgment (D.E. # 40) filed on April 30, 2013. Plaintiff Derek D. Fleming has filed a response in opposition (D.E. # 42), and Defendant has filed a reply brief (D.E. # 44). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

The Amended Complaint alleges that in the course of his employment with Defendant, Plaintiff suffered gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendant now seeks judgment as a matter of law on Plaintiff's claims. Pursuant to Local Rule 56.1(a), Defendant has prepared a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute."[1] For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials

---

[1] Local R. 56.1(a).

in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact.[2] As the non-moving party, Plaintiff must respond to Defendant's statement of facts "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed."[3] Additionally, Plaintiff may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[4] Where Plaintiff asserts that a genuine dispute of material fact exists, Plaintiff must support his contention with a "specific citation to the record."[5] If Plaintiff fails to demonstrate that a fact is disputed or simply fails to address Defendant's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motion.[6]

## I. Factual Background

The Court finds that there is no genuine dispute as to the following material facts, unless otherwise noted. Defendant hired Plaintiff on November 11, 1991, as a casual employee, and he became a regular employee approximately three months later. (Def.'s Statement of Undisputed Facts ¶ 1.) As a regular employee, Plaintiff was a member of the International Brotherhood of Electrical

---

[2] Fed. R. Civ. P. 56(c)(1).

[3] Local R. 56.1(b).

[4] Fed. R. Civ. P. 56(c)(2).

[5] Local R. 56.1(b).

[6] Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

Workers, AFL-CIO, Local 474, which had a collective bargaining agreement ("CBA") with Defendant. (*Id.* at 2.)

During his tenure Plaintiff worked in several different areas before he became a relief operator in Defendant's solar module department in 2009. (*Id.* at 3.) In July 2009, the solar department transitioned to a four-shift rotation consisting of A, B, C, and D shifts. (*Id.* at 4.) The A and B shifts worked 6:00 a.m. to 6 p.m. on alternating days, and the C and D shifts worked 6:00 p.m. to 6:00 a.m. on alternating days. (*Id.*) During the relevant time period, Plaintiff worked the B shift, and Pearl Lewis worked the A shift. (*Id.* at 5.) Plaintiff was the only relief operator on the B shift when it went to the four-shift rotation. (*Id.* at 6.)

As a relief operator, Plaintiff would relieve employees while they went on break and therefore had to know how to perform each position on the solar module production line: assembler, adjuster, inspector, lay-up operator, and lay-up repair. (*Id.* at 7.) If an employee was absent for the day, Plaintiff might be assigned to perform that employee's position for the shift. (*Id.* at 8.) Plaintiff's job also included, but was not limited to, bringing parts to employees on the production line, supplying employees with alcohol and flux (a type of acid), and taking out the trash. (*Id.* at 9.) During Plaintiff's tenure, Defendant issued Plaintiff discipline on at least fourteen (14) different occasions for his attendance, behavior, and other rule infractions. (*Id.* at 10.) Plaintiff adds that as far as discipline he received for attendance, some of his absences were covered by the Family Medical Leave Act ("FMLA"). (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 10.)

On May 6, 2010, Daniel Wilburn, Defendant's manager of safety and environment, learned that Plaintiff had gone to the human resources office to speak with someone but no one was

available. (Def.'s Statement of Undisputed Facts ¶ 11).[7] Wilburn later went to the solar department and asked Julie LeDoux, the section manager in the solar department and Plaintiff's direct supervisor, why Plaintiff had gone to human resources. (*Id.* ¶ 12.) LeDoux was unaware that Plaintiff had done so and told Wilburn that she did not give Plaintiff permission to leave the work area. (*Id.*)

Wilburn eventually spoke with Plaintiff who complained that he had too much work to do, that he did not always have help, and that he had to do more work than Pearl Lewis. (*Id.* at ¶ 13.) Plaintiff did not mention sex discrimination in his meeting with Wilburn. (*Id.* at ¶ 14.) Wilburn explained to Plaintiff that if Plaintiff was doing all he could, then that was all management could expect of him. (*Id.* ¶ 15.) Wilburn also explained to Plaintiff that management was under pressure to reduce staff and at the same time increase production, so everyone had to give their best effort. (*Id.* ¶ 16.) Plaintiff was told that he was the only relief operator on his shift. (*Id.*).

---

[7] Plaintiff has raised the following objection to Wilburn's affidavit in every instance in which Defendant cites the affidavit for support:

> The Affidavit of Danny Wilburn is merely conjecture and is not based on personal knowledge of each and every decision. This self-serving declaration by Wilburn however, is not enough to establish a genuine issue of material fact. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) (Self-serving declarations can only be cognizable to establish a genuine issue of material fact if "they state facts based on personal knowledge and are not too conclusory.").

*See* Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶¶ 11–20; 27–38; 40–41.

For purposes of assessing the undisputed evidence, the Court simply notes that Plaintiff has not cited any evidence to demonstrate that the facts set forth in the Wilburn affidavit are disputed. Rather, Plaintiff argues that the affidavit is inadmissible. The Court will consider Plaintiff's objection in more depth below.

On May 7, 2010, Esther Crutcher, the department manager in the solar department, reported to Wilburn that she and LeDoux had met with Plaintiff and Stephanie Shaw, a union steward, to discuss Plaintiff's wasting time on the clock as well as his disruptive and insubordinate behavior. (*Id.* at ¶ 17.). Crutcher reported to Wilburn that during the meeting Plaintiff leaned in towards his manager, took an aggressive stance, and talked very loud. (*Id.* at 18.) When Plaintiff was asked to lower his voice and tone down, he responded that he was using his normal voice and tone. (*Id.*) Crutcher reported that Plaintiff again became loud, leaned out over the table, assumed an aggressive posture, and at one point slammed his hands down onto the table, knocking the glasses of the union steward onto the floor where the lens popped out. (*Id.* at ¶ 19.).

Wilburn began an investigation into the matter to determine the appropriate action to take regarding Plaintiff's behavior. (*Id.* at ¶ 20.) According to Defendant, LeDoux confirmed Crutcher's description of the meeting with Plaintiff and also reported another incident where Plaintiff was speaking loudly and became animated about a lack of help on his shift and remarked that he was going to file a discrimination suit. (*Id.* at ¶ 21.)[8] LeDoux reported that on May 7, 2010, Plaintiff had asked her early in their shift whether he would have any help that day, and when confusion arose over this issue, LeDoux informed Plaintiff he would not have help that day because they were shorthanded. (*Id.* at ¶ 22.). Plaintiff then asked LeDoux if she hated men on their shift. (*Id.* at 23.)

---

[8] Plaintiff correctly objects that the evidence cited by Defendant does not support Defendant's contention that Ledoux testified about "two separate incidents involving inappropriate behavior by Plaintiff." Def.'s Statement of Undisputed Fact ¶ 21.

When LeDoux turned around to work, Plaintiff came up behind her, spoke directly in her ear, and said he was going to file a sex discrimination suit. (*Id.* at 24.)[9]

LeDoux also reported to Wilburn that during the same shift on May 7, 2010, LeDoux saw Plaintiff talking to other employees on the line which appeared to cause a slowdown in production. (*Id.* at ¶ 25.) LeDoux called Plaintiff over to where she was on the production line to address Plaintiff holding up the line. (*Id.* ¶ 26.)[10] LeDoux reported that when she addressed Plaintiff, he became loud and defensive. (*Id.*) When Plaintiff demanded that LeDoux show him some respect, LeDoux responded that she demanded his respect. (*Id.*)

Wilburn also interviewed Shelia Anderson, a group leader, who confirmed that she saw Plaintiff walk up behind LeDoux and whisper something directly in her ear. (*Id.* at ¶ 27.)[11] Although Anderson could not hear what Plaintiff said, she thought that he seemed to intimidate LeDoux. (*Id.*) Anderson observed the incident where LeDoux asked Plaintiff not to hold up the production line as well. (*Id.* ¶ 28.) Anderson corroborated LeDoux's description of the incident and reported that Plaintiff just snapped at LeDoux and was mean about it. (*Id.*) Anderson stated that LeDoux seemed upset over the incident because she had tears in her eyes. (*Id.* at ¶ 29.) Anderson informed Wilburn

---

[9] Plaintiff correctly points out that the actual testimony was that he would file a sex discrimination suit and not a grievance.

[10] While conceding that LeDoux's written statement about the incident mentions a hold-up on the production line, Plaintiff argues that LeDoux's deposition testimony never actually mentions a production delay.

[11] Plaintiff objects that Anderson's statement to Wilburn is inconsistent with her subsequent statement to the EEOC. The Court notes that Anderson's statement to Wilburn includes more details. However, it does not appear that the statement actually contradicts what she reported to the EEOC in November 2010. If anything, Plaintiff's objection goes to the weight of Anderson's statement.

that Plaintiff had reached the point where he just snapped at everybody and that his attitude was terrible. (*Id.* at ¶ 30.)[12]

Wilburn also interviewed Tammie Bailey, a group leader. (*Id.* ¶ 32.) According to Bailey, on May 5, the shift did not have enough people and Plaintiff felt like another employee, Jarred Smith, should be assisting him. (*Id.*) Bailey overheard Plaintiff say that he "did not know why the hell Jarred is on the line" and "that this is bulls--t, don't make no sense." (*Id.* at 33.) Bailey also reported to Wilburn that she was having a discussion with LeDoux in the office when Plaintiff came into the office to confront LeDoux about her management of the shift. (*Id.* ¶ 34.) LeDoux responded that she would run her own shift. (*Id.*) Bailey also informed Wilburn that on Friday, May 7, 2010, she overheard Plaintiff talking, apparently to himself, that he wanted Jarred Smith helping him and that "she got me f---ed up." (*Id.* at ¶ 35.) Bailey said that Plaintiff had recently been out of control, using profanity, snapping at other employees, and refusing to provide relief. (*Id.* at ¶ 36.) Bailey confirmed that Plaintiff had left the line the day before, Thursday, May 6, 2010, but that no one knew where he had gone. (*Id.* at ¶ 37.) At the conclusion of her meeting with Wilburn, Bailey expressed reservations about giving a statement because she was afraid Plaintiff would "go off." (*Id.* at ¶ 38.)[13]

---

[12] Wilburn concluded that Anderson seemed genuinely concerned about Plaintiff finding out about her statements because Anderson had previously felt threatened by Plaintiff. (*Id.* at ¶ 31.) According to Anderson, Plaintiff had once approached her about doing something that he said was his job. (*Id.*) When Anderson responded that she was simply trying to help him out, Plaintiff told her angrily that it was his job. (*Id.*)

[13] Plaintiff argues that several comments attributed to Bailey are not found in her written statement to Wilburn but only in Wilburn's summary judgment affidavit. Plaintiff objects that the comments are actually Wilburn's characterization of Bailey's statements. Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 36–38. The Court considers this and other objections to Wilburn's affidavit below.

On May 10, 2012, Wilburn suspended Plaintiff pending a full review. (*Id.* ¶ 39.) Based on the information he had received, Wilburn determined that Plaintiff's demeanor was increasingly aggressive and that human resources needed to intervene to avoid further escalation. (*Id.*)[14] Wilburn further concluded that Plaintiff had already violated several workplace rules by wasting time, using profanity, becoming insubordinate, and intimidating other employees. (*Id.* at ¶ 40.) Wilburn recommended that Plaintiff be terminated for an accumulation of work rule violations based on his entire disciplinary history and the events occurring in May 2010. (*Id.* ¶ 41.) Wilburn arrived at his conclusions without relying on any person's opinion or suggestion. (*Id.*) Wilburn forwarded his recommendation, the results of his investigation, and Plaintiff's personnel file to Defendant's human resources department for further review and a decision on Plaintiff's employment status. (*Id.* at ¶42.)[15]

On May 20, 2010, after human resources completed its review, T.C. Jones, Jr., Defendant's vice-president of human resources and general affairs, made the final decision to terminate Plaintiff's employment for an accumulation of work rule violations. (*Id.* ¶ 43.) Thereafter, Plaintiff filed a grievance over his termination, which the grievance review board ultimately denied. (*Id.* ¶ 44.)[16]

---

[14] Other than the fact of his suspension, Plaintiff disputes this contention. Plaintiff has not actually cited any record evidence to show why he disputes the statement. Therefore, the Court deems it undisputed for purposes of summary judgment.

[15] Plaintiff responds that he cannot agree with this statement as it calls for speculation. Plaintiff has not demonstrated why a dispute exists about what steps Wilburn took next. Therefore, the Court deems this fact undisputed for purposes of summary judgment.

[16] Defendant adds that the grievance review board consists of three members of management and three employees who are part of the bargaining unit. (Def.'s Statement of Undisputed Fact ¶ 44.)

Plaintiff concedes that his retaliation claim is based on his suspension leading up to his termination, and not any gender discrimination. (*Id.* ¶ 59.) In other words, Plaintiff does not believe that he was terminated due to his gender. (*Id.* ¶ 60.)[17] As for his gender discrimination claim, Plaintiff bases his claim on the following. First, Plaintiff alleges that he had to assist female employees by getting parts for them. (*Id.* ¶ 45.) Plaintiff admits that getting parts for other employees was part of his job duties as a relief operator. (*Id.* at ¶ 46.)[18] Second, Plaintiff alleges that he had to help female employees by removing solar modules from the line for them or by removing modules stuck on the conveyor. (*Id.* ¶ 47.) Third, Plaintiff alleges he was treated differently based on his sex because he did not get help with some aspects of his job such as stocking the production lines, hauling trash, loading up overlay carts, and stocking solar cells. (*Id.* ¶ 48.) Fourth, Plaintiff claims that he had to assist Pearl Lewis, a relief operator on a different shift, on the production line when she would work overtime on his shift. (*Id.* ¶ 49.) Plaintiff admits that when he did not receive additional help, it had no affect on his pay in any way and that he got paid at the same hourly rate whether he had help or not. (*Id.* ¶¶ 50, 51.) According to Defendant, Plaintiff did not have to work longer hours if he did not get help and was never disciplined for not completing his job duties as a

---

[17] Plaintiff states that he disagrees with this statement but does not actually cite any record evidence to support his position. Therefore, the Court deems this statement to be undisputed for purposes of summary judgment.

[18] Plaintiff disputes this statement and several other statements by asserting that Defendant provided other relief operators working other shifts with additional resources. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶¶ 46, 48–51.) However, Plaintiff cites only his own complaint to LeDoux in March 2010, describing his belief about other shifts receiving more help than his shift. Plaintiff has not actually cited any evidence to show that other relief operators did in fact receive additional help. Therefore, the Court finds that this statement is undisputed for purposes of summary judgment.

relief operator. (*Id.* ¶ 52.)[19] Furthermore, Plaintiff admits that he sometimes received help on the job when it was available but that help was not always available. (*Id.* ¶ 53.) Plaintiff admits that he was not denied any benefits or suffered pay disparities due to his gender. (*Id.* ¶ 54.)[20]

Plaintiff has identified Pearl Lewis as a similarly situated, non-protected employee who received more favorable treatment than he did. According to Plaintiff, Lewis received training on solar modules three months before Plaintiff received the same training. (*Id.* ¶ 56.) Plaintiff admits that he was never denied any other training that a female employee received and that he received all of the same training as Lewis. (*Id.* ¶ 57.) Plaintiff complains only that Lewis received the solar training first. (*Id.* ¶ 58.)[21] Plaintiff claims that he was denied training for the inspection of solar modules due to his gender. (*Id.* ¶ 55.)[22] As previously mentioned, Plaintiff worked B shift, and LeDoux was his supervisor; Lewis worked A shift, and Paulette Quigley was her supervisor. (*Id.*

---

[19] Plaintiff disputes this fact by asserting that it took him longer to complete his duties because he did not receive the same kind of help that other relief operators received. However, Plaintiff has failed to cite any record evidence to support his contention. Therefore, the Court deems this fact admitted for purposes of summary judgment.

[20] To dispute these statements, Plaintiff has cited the allegations of his pleadings. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶¶ 53–54.) When a Rule 56 motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Without record evidence to support his contention, Plaintiff has failed to show that a genuine dispute exists as to these facts.

[21] Again Plaintiff cites his own pleadings to dispute Defendant's statement of fact. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 58.) As such, the Court deems the statement to be undisputed for purposes of summary judgment.

[22] Other than Pearl Lewis, Plaintiff testified that only one other female employee, Vicky Griffin, was treated more favorably than he was. (*Id.* ¶ 61.) Plaintiff testified that Griffin received more favorable treatment in 2004 and 2005 when she was allowed to work with a protective boot on her foot. (*Id.* ¶ 62.) Plaintiff was not allowed to work with a protective boot, though this was prior to Plaintiff working in the solar department. (*Id.*)

¶ 63.)[23] Lewis would periodically work overtime on B shift, and Plaintiff would occasionally volunteer for overtime on A shift. (*Id.* ¶ 64.) When Lewis worked B shift with Plaintiff, she would be assigned to the camera position on the production line or to whatever position was needed at the time. (*Id.* ¶ 65.) Plaintiff testified that when he worked overtime on A shift, he would be placed in whatever position was needed at the time. (*Id.* ¶ 66.) Plaintiff argues that his job assignments were discriminatory because management assigned Lewis who was also a relief operator the camera position when she worked B shift and did not assign her to assist Plaintiff in working as a relief operator. (*Id.* ¶ 67.)[24]

Plaintiff alleges he complained to LeDoux about being treated differently because of his gender on May 7, 2010. (*Id.* ¶ 68.) Plaintiff adds that he had made other complaints in March 2010. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 68.) Plaintiff only complained about his workload and no other aspect of his employment with Defendant. (Def.'s Statement of Undisputed Fact ¶ 70.) Plaintiff claims that he was terminated because he complained about sex discrimination. (*Id.* ¶ 71.) According to Plaintiff, he was terminated for making a complaint because after his meeting with Crutcher, LeDoux, and his shop steward, he was suspended later the same day and

---

[23] Plaintiff adds that he cannot admit or deny some of Defendant's contentions about Lewis's work duties. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶¶ 64–66.) Even so, once Defendant has adduced evidence at the summary judgment stage, the burden shifts to Plaintiff to demonstrate that the fact is disputed. By admitting that he has no information to admit or deny Defendant's contentions, Plaintiff has essentially admitted the facts for purposes of summary judgment.

[24] Plaintiff responds that he disputes this statement because "Pearl Lewis was not called upon to perform the same tasks as the Plaintiff." (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 67.) Again Plaintiff has cited only the allegations of his Amended Complaint in support of his contention. The Court deems Defendant's statement to be undisputed for purposes of summary judgment.

eventually terminated. (*Id.* ¶ 72.) Plaintiff describes the meeting as a success and states that he left believing that management would hire more help at his position. (*Id.* ¶ 73.) Plaintiff admitted that he had no other facts to support his belief that Defendant retaliated against him. (*Id.* ¶ 74.)[25]

Plaintiff acknowledged that Defendant can terminate an employee for an accumulation of work rule violations. (*Id.* ¶ 75.)[26] Defendant has terminated other employees for an accumulation of work rule violations since 2009. (*Id.* ¶ 76.)[27] Plaintiff has admitted that he is not aware of any other employee with a disciplinary history similar to his who was not terminated. (*Id.* ¶ 77.)[28] Plaintiff does not know who conducted the investigation which led to his termination, what rule violations were considered in his termination, or who recommended his termination. (*Id.* ¶ 78.) Plaintiff adds that Karen Tanaka signed his separation notice. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 78.) Plaintiff does not know whether Crutcher or LeDoux wanted him terminated for making his complaints about sex discrimination. (Def.'s Statement of Undisputed Fact ¶ 79.)

## II. Evidentiary Objections

---

[25] Again Plaintiff has cited only the allegations of his Amended Complaint to dispute Defendant's contention. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 74.) The Court deems Defendant's statement to be undisputed for purposes of summary judgment.

[26] Plaintiff responds that he does not agree with this statement but cites no evidence to support his position. The Court deems Defendant's statement to be undisputed for purposes of summary judgment.

[27] With respect to this statement, Plaintiff responds that he "has no manner within which to verify the answer." (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 76.) By admitting that he has no information to admit or deny Defendant's contentions, Plaintiff has essentially admitted the facts for purposes of summary judgment.

[28] Plaintiff responds that he "cannot verify the disciplinary history of all the employees of Sharp Manufacturing of America" and therefore cannot respond to Defendant's statement of fact. (Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 77.) This response fails to demonstrate that Defendant's factual assertion is disputed for purposes of summary judgment.

As previously noted, Plaintiff has objected to the admissibility of the summary judgment affidavit of Daniel Wilburn (D.E. # 40-6). Specifically, Plaintiff objects that the affidavit is self-serving, "is merely conjecture, and is not based on personal knowledge."[29] The Court holds that Plaintiff's objection is not well-taken. The fact that the Wilburn affidavit is perhaps self-serving does not make the affidavit inadmissible at summary judgment. The case which Plaintiff cites for support, *Rodriguez v. Airborne Express*, 265 F.3d 890 (9th Cir. 2001), actually states that "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."[30] The Ninth Circuit even observed that "any affidavit of a party that is worth submitting is 'self-serving.'"[31] In this case Wilburn's affidavit sets forth the facts Wilburn gathered as part of his investigation into Plaintiff's job-related conduct in May 2010. As Defendant correctly argues, "[w]hat Mr. Wilburn learned and determined during his investigation is clearly within his own personal knowledge."[32] The Court finds then that the Wilburn affidavit, though favorable to Defendant, is admissible at summary judgment.

It does appear that the Wilburn affidavit contains what is arguably hearsay, though Plaintiff has not raised this specific objection.[33] Wilburn has sworn to the contents of conversations he had with other parties and has attached to this affidavit signed statements made by Plaintiff's supervisors

---

[29] Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶¶ 11–20; 27–38; 40–41.

[30] *Rodriguez,* 265 F.3d at 902.

[31] *Id.* (citation omitted).

[32] Def.'s Reply 7 (D.E. # 44).

[33] *See R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty., Ky.*, No. 11-5700, 2012 WL 3525403, at *6 (6th Cir. Aug. 16, 2012) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.") (quotation omitted)).

and addressed to Wilburn. The Sixth Circuit has held that investigative findings, including witness statements gathered by an employer during an internal investigation, are properly considered at summary judgment and do not constitute hearsay as long as the findings and statements are offered "not to prove their truth but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff."[34] It undisputed in this case that management relied on the conclusions of Wilburn's investigation in making the decision to terminate Plaintiff's employment. As such, Wilburn's findings are relevant to the issue of whether Defendant "made a reasonably informed and considered decision before taking" action to discharge Plaintiff.[35] Therefore, Plaintiff's objection to the admissibility of the Wilburn affidavit is overruled.

For his part Plaintiff has attached to his response brief statements given by Sharp employees Tammie Bailey and Shelia Anderson to an EEOC investigator in November 2010. *See* Pl.'s Resp. in Opp'n, exs. D& E. In its reply brief, Defendant argues that the statements are inadmissible hearsay and should not be considered by the Court at summary judgment. The Court agrees and holds that the statements made by Bailey and Anderson to the EEOC are inadmissible hearsay. Both statements were actually taken down by an EEOC investigator, and neither employee signed her respective statement. It is true that Wilburn interviewed Bailey and Anderson during his investigation and included statements from both employees in his own report. The critical difference is that unlike Wilburn's affidavit, Plaintiff relies on the statements given to the EEOC to prove the truth of the matters asserted by his co-workers. Plaintiff has cited both statements in his response

---

[34] *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (citing *Haughton v. Orchid Automation*, 206 F. App'x 524, 532 (6th Cir. 2006) (internal ellipsis omitted).

[35] *Id.* at 598–99.

to Defendant's statement of undisputed fact to contest facts about Plaintiff's on-the-job conduct and demeanor. Although the Court can consider witness statements made to the EEOC "to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff,"[36] witness statements such as these from co-workers are not admissible to prove the truth of the matters asserted in the statements.[37] Therefore, the Court declines to consider the statements given by Bailey and Anderson to the EEOC investigator after Plaintiff's discharge.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[39] and the "judge may not make credibility determinations or weigh the evidence."[40] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his

---

[36] *Id.* at 598.

[37] *E.E.O.C. v. Sharp Mfg. Co. of Am.*, No. 06-2611, 2008 WL 189847, at *2–3 (W.D. Tenn. Jan. 22, 2008) (Breen, J.) (citing *Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329 (5th Cir. 2007)); *see also Waller v. Thames*, 852 F.2d 569, at *2 (6th Cir. 1988) (unpublished table decision) ("Appellate courts have generally upheld the exclusion of EEOC investigatory files, which often represent a mish-mash of self-serving and hearsay statements and records . . . .") (internal quotation marks omitted); *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 847 (M.D. Tenn. 2012).

[38] Fed. R. Civ. P. 56(a); *see Celotex*, 477 U.S. at 322; *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[39] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[40] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[41]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[42]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[43]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[44]

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[45]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[46]

## ANALYSIS

### I. Gender Discrimination

Defendant first seeks summary judgment on Plaintiff's claim of gender discrimination. Defendant argues that Plaintiff cannot show that he suffered an adverse employment action or that

---

[41] *Celotex*, 477 U.S. at 324.

[42] *Matsushita*, 475 U.S. at 586.

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[44] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[45] *Anderson*, 477 U.S. at 251-52.

[46] *Celotex*, 477 U.S. at 322.

a similarly situated, non-protected employee was treated more favorably. While Plaintiff has provided extensive briefing on the law of gender discrimination generally, Plaintiff has only argued that he has proof of Defendant treating similarly situated, female employees more favorably. Plaintiff has not addressed Defendant's contention that Plaintiff has no proof of a materially adverse employment action.

In order to establish a prima facie case of gender discrimination, Plaintiff must show: (1) he is a member of a protected group; (2) he was subjected to an adverse employment decision; (3) he was qualified for the position; and (4) he was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably.[47] Once the employee satisfies his prima facie burden, the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for its decision.[48] If the employer provides a nondiscriminatory reason for its actions, the burden shifts back to the employee to show that the reason is pretext for discrimination.[49] Also the Sixth Circuit has held that in cases of reverse discrimination, i.e. where the plaintiff is not a member of a protected class, the employee must prove "background

---

[47] *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012). Plaintiff actually briefs the elements of a hostile work environment gender discrimination claim. The Court specifically denied Plaintiff leave to amend his complaint to add a claim for hostile work environment. *See* Order Granting in Part, Denying in Part Mot. to Amend Compl. 9–10 (D.E. # 24). Moreover, Plaintiff has not argued how the evidence in this case would make out such a claim. Therefore, the Court need not consider the issue further.

[48] *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir. 2013).

[49] *Id.*

circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority."[50]

The Court holds that Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim because Plaintiff has no proof that he was subjected to an adverse employment action. "An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions."[51] For example, an adverse employment action usually results in "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."[52] Plaintiff has denied that he suffered any of these kinds of changes in his employment. Plaintiff suffered no loss of pay or other benefits to which he was entitled. And while Plaintiff was ultimately discharged, Plaintiff has specifically denied that he was terminated due to his gender, thus conceding that his discharge was not a materially adverse action to support his gender discrimination claim.

Plaintiff has simply asserted that the following acts constituted adverse changes in his employment: assisting female employees by getting parts for them; helping female employees on the production line by removing solar modules from the line for them or by removing modules stuck on the conveyor; and being denied help with some aspects of his job such as stocking the production lines, hauling trash, loading up overlay carts, and stocking solar cells. Viewing this evidence in the

---

[50] *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006).

[51] *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013).

[52] *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quotation omitted).

light most favorable to Plaintiff, none of these facts establish a materially adverse employment action. Plaintiff admits that all of these tasks were among his normal job duties. Plaintiff has not shown then that Defendant actually increased his responsibilities, only that Plaintiff was the only relief operator assigned to the B shift.[53] And even if Plaintiff could show that Defendant increased his workload, "an alteration of job responsibilities" does not amount to an adverse employment action.[54] The Court holds then that this evidence does not satisfy Plaintiff's burden to prove an adverse action.

Plaintiff makes one other allegation of disparate treatment, namely, that Pearl Lewis, a female relief operator on another shift, was provided with training three months before Plaintiff received the same training. The Sixth Circuit has held that a "deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action."[55] However, a failure to train is not an adverse action without some showing that the "training was required or that failure to attend the training would result, or has resulted, in any demotion, loss of pay, loss of responsibility, or other materially adverse effect."[56] In this case Plaintiff has not shown that the delay in his training had any

---

[53] It is undisputed that Defendant reorganized its solar department into new shifts in July 2009 and that Plaintiff was the only relief operator on shift B. Def's Statement of Undisputed Fact ¶¶ 6, 7.

[54] *Spees*, 617 F.3d at 391; *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 922 (W.D. Tenn. 2011) (McCalla, C.J.) (holding that an increase in job responsibilities is not a materially adverse employment action).

[55] *Clay*, 501 F.3d at 710. *But see Darby v. U.S. Dep't of Energy*, No. 05-4325, 2006 U.S. App. LEXIS 32556, at *15 (6th Cir. June 8, 2006) ("Her allegations are insufficient to make a prima facie showing of discrimination because the failure to provide training or to attend seminars is not an adverse employment action.").

[56] *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 567 (6th Cir. 2012)

effect on his compensation or job responsibilities. Nor has Plaintiff adduced any proof that the delay in training was one of "other indices that might be unique to [his] particular situation."[57]  It cannot be said then that the delay in training was materially adverse. Therefore, the Court concludes that Plaintiff has not shown that he suffered a materially adverse change in the terms and conditions of his employment, one of the essential elements of his claim.

In addition to his failure to prove that his job duties amounted to an adverse employment action, Plaintiff has not shown that a similarly situated, female employee received more favorable treatment. Two employees must be "similarly-situated" in all relevant aspects of their respective employment circumstances.[58]  The comparison employee (1) must have dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[59]  Plaintiff compares himself to Pearl Lewis, a female employee who worked as a relief operator on shift A.[60]  And yet Plaintiff has cited no evidence that Lewis received help in performing her duties as a relief operator on her shift while Plaintiff was denied

---

[57] *Kuhn*, 709 F.3d at 625.

[58] *Ercegovich v. Goodyear Tire & Rubber*, 154 F.3d 344, 353 (6th Cir. 1998).

[59] *Id*. at 352; *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012).

[60] Defendant has cited evidence concerning another female employee named Vicky Griffin who allegedly received more favorable treatment than Plaintiff. Def.'s Statement of Undisputed Fact ¶¶ 61, 62. However, Plaintiff has not discussed Griffin at all in his response brief, indicating to the Court that Plaintiff does not base his claims on any comparison with the treatment received by Griffin. Therefore, the Court need not consider whether Griffin was treated more favorably than Plaintiff.

similar help on his shift.[61]  In fact, it is undisputed that Plaintiff sometimes received help on the job when it was available.[62]

Instead Plaintiff seems to argue that Defendant discriminated against him because Lewis occasionally worked overtime on Plaintiff's shift but not as a relief operator, thereby keeping Lewis from helping Plaintiff.  Plaintiff's theory is somewhat convoluted and fails to demonstrate that Defendant treated Lewis more favorably than Plaintiff.  On the contrary, the undisputed record demonstrates that Lewis and Plaintiff received the same treatment with regard to their overtime assignments.  The evidence shows that both Plaintiff and Lewis volunteered for overtime on other shifts.[63]  The evidence further shows that when Plaintiff and Lewis worked other shifts, they would work in whatever position was needed at the time, and not necessarily as relief operators.[64]  The Court finds that the evidence fails to show then that Defendant treated Lewis more favorably than Plaintiff.  What is more, Plaintiff has completely failed to show that Defendant is the "unusual employer who discriminates against" non-protected employees.  Therefore, Plaintiff cannot make out a prima case claim of gender discrimination, and Defendant's Motion for Summary Judgment is **GRANTED** on the claim.

---

[61] Plaintiff states in his brief that he "was refused help with his position if he needed it and was prevented for [sic] seeking assistance from other employees" while "female employees that included Lewis and another female employee were given assistance with duties . . . ."  Pl.'s Resp. in Opp'n 3–4.  Plaintiff has cited no evidence to support this contention and the statement appears to contradict the undisputed evidence.  Therefore, the Court declines to address it further.

[62] Def.'s Statement of Undisputed Fact ¶ 53 ("Plaintiff admits that he sometimes received help on the job when it was available but that help was not always available.").  As previously noted, Plaintiff failed to dispute this statement with a citation to record evidence.

[63] Def.'s Statement of Undisputed Fact ¶ 64.

[64] *Id.* ¶ 66.

**II. Retaliation**

Defendant next seeks summary judgment on Plaintiff's retaliation claim.  Defendant argues that Plaintiff cannot show that he engaged in protected activity.  According to Defendant, Plaintiff did not have a reasonable belief that Defendant violated Title VII by denying him assistance on account of his gender.  Furthermore, Defendant contends that Plaintiff has no proof of pretext. Defendant relies on the honest belief rule to establish that Wilburn investigated Plaintiff's on-the-job conduct and that human resources made the decision to terminate Plaintiff's employment on the basis of Wilburn's conclusions.  Therefore, Defendant argues that Plaintiff cannot make out his retaliation claim.

Plaintiff responds that he can show that he engaged in protected activity.  Plaintiff argues that in March 2010 he filed a union grievance alleging violations of the collective bargaining agreement with respect to relief operators; in May 2010 he made verbal complaints to his supervisor about gender discrimination; and in June 2010 he filed a charge of discrimination with the EEOC.  Plaintiff further argues that he can establish a causal connection between his protected activity and his discharge by means of temporal proximity alone.  As for the pretext issue, Plaintiff disputes that his previous workplace violations could have justified his dismissal.  Plaintiff also points to inconsistencies among Defendant's witnesses about the meeting that took place between Plaintiff, LeDoux, Shaw, and his union steward in May 2010.   For these reasons Plaintiff argues that triable issues remain on his retaliation claim.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in

any manner in an investigation, proceeding, or hearing" under Title VII.[65]  In order to make out his prima facie case of retaliation, Plaintiff must demonstrate the following: (1) that he engaged in protected conduct; (2) that Defendant had knowledge of his protected activity; (3) that Defendant took an adverse employment action against him; and (4) that there was a causal connection between the protected activity and the adverse employment action.[66]  "Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ('EEOC') and opposition to an apparent Title VII violation."[67]

As an initial matter, the parties dispute in this case whether Plaintiff ever engaged in protected activity.  The Court would simply state that Plaintiff's EEOC charge cannot be causally connected to his discharge because Plaintiff filed the charge after Defendant had terminated his employment.  Additionally, Plaintiff mentions his March 2010 union grievance but does not actually make the grievance part of the record.  Plaintiff has included a memo written by LeDoux on March 12, 2010.  According to the memo, Plaintiff told LeDoux he intended to file a union grievance about the lack of assistance he had received in performing his job duties as a relief operator.[68]  The memo does not refer to any complaint about Plaintiff being treated differently because of his gender.  On its face then, the memo does not constitute proof of Plaintiff's opposition to any practice made unlawful by Title VII.

---

[65] 42 U.S.C. § 2000e–3.

[66] *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008).

[67] *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citation omitted).

[68] *See* LeDoux Dep., ex. Memo., Page ID 532 (D.E. # 42-4).

23

Nevertheless, the Court finds that Plaintiff has adduced proof he made statements to LeDoux complaining of possible gender discrimination just prior to his termination. It is undisputed that on May 7, 2010, Plaintiff requested help during his shift, was told that he would have no help that day, asked LeDoux if she hated men on their shift, and then threatened to file a sex discrimination suit. Additionally, Plaintiff states in his brief that during a meeting on May 10, 2010, his department manager told him "she did not want to hear anything more about gender discrimination and that the Plaintiff needed to let that go."[69] A reasonable juror could find from this evidence that Plaintiff protested what he believed to be discriminatory conduct. Even so, Defendant responds that Plaintiff could not have had a reasonable belief that Defendant was violating Title VII or that his activities were causally connected to his dismissal.[70]

The Court need not resolve this issue because even if Plaintiff is able to make out a prima facie case of retaliation, Defendant has proffered a legitimate, nondiscriminatory reason for dismissing Plaintiff, and Plaintiff cannot show that Defendant's reason is pretext for discrimination. Defendant has adduced evidence that it terminated Plaintiff's employment because of an accumulation of rules violations, particularly Plaintiff's insubordinate behavior and confrontations with management leading up to his suspension on May 10, 2010. Plaintiff does not dispute that Defendant's proffered reasons were nondiscriminatory reasons. The burden, therefore, shifts back

---

[69] Pl.'s Resp. in Opp'n 4.

[70] *Jackson v. Bd. of Educ. of Memphis City Sch. of Memphis, Tenn.*, 494 F. App'x 539 (6th Cir. 2012) (holding that the plaintiff had not reasonably opposed an employment practice which violated Title VII).

to Plaintiff to prove that Defendant's given reasons (1) have no basis in fact; (2) did not actually motivate the termination; or (3) were insufficient to warrant his dismissal.[71]

Plaintiff essentially argues that Defendant's stated reasons have no basis in fact and denies that he engaged in the conduct described by his managers. Plaintiff further argues that Defendant improperly took into account previous disciplinary infractions for attendance, either because the missed days were protected FMLA leave or because the infractions should have been removed from his personnel file. Defendant argues that it had an honest belief in the conclusions of Wilburn's investigation and that the honest belief rule should protect its decision to terminate Plaintiff.

Even when an employee can show that a factual dispute exists about an employer's given reasons for taking action against the employee, the honest belief rule insulates the employer's decision as long as the employer can prove an honest belief in its proffered reason.[72] The employer must show that it reasonably relied on "particularized facts that were before it at the time the decision was made."[73] The plaintiff then has the burden to prove that the employer's belief was not honestly held.[74] "An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact."[75] In other words, "the employee cannot establish pretext even if the

---

[71] *Seeger v. Cincinnati Bell Tel. Co., LLC,* 681 F.3d 274, 285 (6th Cir. 2012).

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless."[76]  The relevant inquiry is whether a reasonable jury could conclude that Defendant "failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process unworthy of credence . . . ."[77]  "If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext."[78]

The Court holds that Defendant is entitled to summary judgment on Plaintiff's retaliation claim because Defendant made a reasonably informed and considered decision before dismissing Plaintiff.  In this case, Defendant has shown that its decision was based on the particularized facts contained in the Wilburn report.  Wilburn took statements from Plaintiff's supervisors and co-workers, all indicating that Plaintiff's behavior seemed to be increasingly erratic and threatening to other employees leading up to May 2010.  In particular Plaintiff's supervisors found Plaintiff's conduct to be "disruptive and insubordinate."[79]  Wilburn completed his investigation and reported his findings to human resources.  Based on his review of Plaintiff's recent conduct and his entire disciplinary history, Wilburn recommended Plaintiff's dismissal.  The final decision to terminate Plaintiff's employment was made by human resources.  At summary judgment, Plaintiff only argues that management's perception of his conduct was factually baseless.  Be that as it may, "arguing

---

[76]  *Id.* at 286 (citation and internal quotation marks omitted).

[77]  *Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508 (6th Cir. 2012) (quoting *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 708 (6th Cir. 2006)).

[78]  *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012).

[79]  Willburn Aff. ¶ 3 (D.E. # 40-6).

about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*."[80] Thus, Plaintiff has not carried his burden to show that Defendant's process in arriving at its decision to dismiss him is "unworthy of credence."

Plaintiff also contends that Defendant improperly considered prior disciplinary actions against him for attendance in deciding to terminate his employment. It is true that Defendant's decision was based on Plaintiff's entire disciplinary history with the company, not just the events leading up to his suspension in May 2010, and that among Plaintiff's prior disciplinary infractions were a number of warnings for attendance. Plaintiff admits that he was absent on the dates documented in his personnel record and that the warnings for attendance were part of the personnel record Defendant considered in deciding to terminate his employment. Plaintiff merely disputes the merits of the attendance warnings in 2004 and 2005, claiming that most of his absences in 2004 and 2005 should have qualified as FMLA leave and that the union told him the warnings would be removed from his file. However, other than his testimony that his absences were related to doctor's appointments for his daughter or himself, Plaintiff has not shown that his absences actually qualified as FMLA leave or that he followed Defendant's procedures to report the days as FMLA leave. Thus, the Court finds this argument unconvincing.

Plaintiff has also failed to cite any support for his claim that Defendant should have disregarded discipline related to attendance occurring more than one year prior to his dismissal. Plaintiff has cited the CBA's provisions on progressive discipline for poor attendance, which state

---

[80] *Tibbs*, 505 F. App'x at 514 (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998)).

that an employee with three or more disciplinary actions in a 12-month period could face dismissal for chronic absenteeism.[81]  In this case, however, it is undisputed that Plaintiff was not dismissed for chronic absenteeism but an accumulation of work rules violations of several kinds.  Plaintiff simply has no evidence that Defendant wrongfully considered his prior discipline for attendance along with other kinds of workplace policy violations in deciding whether to terminate his employment.

Perhaps most importantly, Plaintiff does not dispute his other fourteen disciplinary infractions spread out over his entire tenure with Defendant, which were not related to his medical absences in 2004 and 2005.  These included warnings for unsatisfactory attendance at other times, poor work performance, wasting time, insubordination, and the use vulgar, inflammatory or abusive language.  In sum, the Court holds that Plaintiff has not "produc[ed] evidence that an error by the employer was too obvious to be unintentional" and thus has not overcome the honest belief rule.[82]  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation claim.

---

[81] CBA, § 35.3, Page ID 543 (D.E. # 42-7).

[82] *Tingle*, 692 F.3d at 531 (citation omitted).

## CONCLUSION

Defendant's Motion for Summary Judgment on Plaintiff's gender discrimination and retaliation claims is **GRANTED**. Plaintiff has failed to adduce evidence to make out his prima facie case of gender discrimination. Even accepting that Plaintiff can make out a prima facie claim for retaliation, Plaintiff has no proof that Defendant's legitimate reasons for dismissing him were pretext or that Defendant did not hold an honest belief in its legitimate reasons for dismissing him. Therefore, Defendant's Motion is **GRANTED** on Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 15, 2013.